# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LAURA SATERBAK, individually and on behalf of a class of persons similarly situated,

Plaintiff,

v.

MTC FINANCIAL INC., dba TRUSTEE CORPS, FEDERAL HOME LOAN MORTGAGE COPRORATION, FLAGSTAR BANK, JOAN H. ANDERSON, and DOES 1 through 100,

Defendants.

3:10-cv-501-RCJ-VPC

**ORDER**

Currently before the Court are MTC Financial Inc. dba Trustee Corp's ("Trustee Corps") Motion to Dismiss (#6), Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion to Dismiss (#12), and Flagstar Bank, FSB ("Flagstar") and Joan H. Anderson's Motion to Dismiss (#23).

The Court heard oral argument on January 18, 2011.

## BACKGROUND

### I.   Foreclosure Documents[1]

Plaintiff Laura D. Saterbak executed a note secured by a deed of trust on a piece of property located at 900 S. Meadows Pkwy., Unit 2722, Reno, Nevada, which was recorded in

---

[1]   Trustee Corps and Freddie Mac each filed a request for judicial notice and attached copies of relevant publicly recorded documents. (*See* Request for Judicial Notice (#7, 13)). The Court grants the request for judicial notice. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

1  Washoe County on July 13, 2007. (Deed of Trust (#7-1) at 2-3, 5). The mortgage, dated July

2  5, 2007, was for $266,400. (Id. at 4). The lender on the deed of trust was Flagstar. (Id.). The

3  trustee on the deed of trust was Joan H. Anderson. (Id.). The Mortgage Electronic

4  Registration System, Inc. ("MERS") was named as "a nominee for Lender and Lender's

5  successors and assigns" and claimed to be the beneficiary[2] under the security instrument.

6  (Id.).

7      On February 1, 2009, Plaintiff defaulted on her mortgage payments for an unspecified

8  amount. (See Notice of Default (#7-2) at 3). On June 3, 2009, MERS, as a nominee for the

9  lender, executed a Substitution of Trustee and replaced Trustee Corps as the trustee for

10  Anderson. (Substitution of Trustee (#7-3) at 2-3).[3]

11      On June 4, 2009, First American Title Insurance Company ("First American") filed a

12  notice of default and election to sell with the Washoe County Recorder's office. (Notice of

13  Default (#7-2) at 2, 4). First American was acting as an agent of Trustee Corps which, in turn,

14  was acting as an agent for MERS, who was acting as a nominee for the lender. (Id. at 4). The

15  notice of default named Trustee Corps as the substituted trustee under the deed of trust. (Id.

16  at 3). The notice of default identified the breach of obligations as "the installment of principal

17  and interest which became due on 02/01/2009 and all subsequent installments of principal and

18  interest, along with late charges, plus foreclosure costs and legal fees." (Id.).

19      On June 4, 2009, MERS executed an assignment of deed of trust and granted Freddie

20  Mac all beneficial interest under the deed of trust. (Assignment of Deed of Trust (#7-5) at 2).[4]

21      On September 8, 2009, Trustee Corps recorded a notice of trustee's sale with the

22  Washoe County Recorder's office. (Notice of Trustee's Sale (#7-4) at 2). On January 27,

23  2010, Trustee Corps recorded a trustee's deed upon sale which explained that Trustee Corps

25  [2] Despite the wording of the deed of trust, MERS is not a beneficiary to the deed of trust. See Gomez v. Countrywide Bank, FSB, 2009 WL 3617650 at *2 (D. Nev. 2009).

27  [3] The Substitution of Trustee was recorded on June 25, 2009, after the substituted trustee filed a notice of default. (See Substitution of Trustee (#7-3) at 2).

28  [4] The Assignment of Deed of Trust was recorded on January 27, 2010. (See Assignment of Deed of Trust (#7-5) at 2).

1 │ had sold the property to Freddie Mac for $170,160 at a public auction on January 12, 2010.

2 │ (Trustee's Deed Upon Sale (#7-6) at 2-3).

3 │ **II.    The Complaint**

4 │       In August 2010, Flagstar filed a petition for removal and attached Plaintiff's complaint

5 │ from the Second Judicial District Court in Washoe County.  (Petition for Removal (#1, 1-2)).

6 │ In the complaint, Plaintiff sued Trustee Corps, Freddie Mac, Flagstar, and Anderson.

7 │ (Complaint (#1-2) at 8).  Plaintiff's complaint listed six causes of action.  (*Id*. at 5).

8 │       In the first cause of action, Plaintiff accused Flagstar and Trustee Corps of violating

9 │ state foreclosure law.  (*Id*. at 17).  Plaintiff asserted that her obligation to pay her mortgage

10 │ was discharged when investors in the mortgage-backed securities claims were paid as a result

11 │ of federal bailout funds or other monies paid to investors who owned her note.  (*Id*.).  She

12 │ alleged that she was not insisting that she did not have to repay her loan, but rather that no

13 │ money was owed to the defendants for the loan.  (*Id*. at 17-18).  She asserted that no entity

14 │ that had a right to payment from her had ever declared her in default.  (*Id*. at 18).  She also

15 │ asserted that MERS was not a proper beneficiary or nominee and that Flagstar and Trustee

16 │ Corps were not beneficiaries of the note.  (*Id*.).  She claimed that Trustee Corps failed to give

17 │ notice, in the notice of default, of her arrearage and what amount would be required to bring

18 │ the loan current.  (*Id*. at 19).  She asserted that the notice of default was defective and violated

19 │ NRS § 107.080.  (*Id*.).

20 │       In the second cause of action, Plaintiff alleged that all defendants conspired to violate

21 │ Nevada's non-judicial foreclosure law.   (*Id*. at 20).   Specifically, she asserted that all

22 │ defendants knew that she would not be qualified for the loan, that the deed of trust would not

23 │ be transferred with the promissory note, that foreclosure on the home was highly likely, that

24 │ foreclosure would be initiated by a party who was not the trustee of the deed, and that Flagstar

25 │ would not modify her loan and would tell her not to make payments so they could foreclose

26 │ on the property.  (*Id*. at 20-21).

27 │       In the third cause of action, Plaintiff alleged fraud in the inducement against Flagstar

28 │ and Anderson.  (*Id*. at 21).  She alleged that they failed to disclose during the execution of the

1 │ closing papers that the loan was a sub-prime loan, that she was not qualified to enter the loan,

2 │ and that there would be a catastrophic drop in real estate values. (*Id.*). She asserted that they

3 │ concealed the true terms of the loan, the risk of the transaction, the risk of default, and the risk

4 │ of foreclosure. (*Id.* at 21-22). She contended that Flagstar induced her to make payments

5 │ when the defendants had already foreclosed on her property. (*Id.* at 22).

6 │ In the fourth cause of action, Plaintiff alleged unjust enrichment against all defendants.

7 │ (*Id.* at 24). She alleged that they engaged in a deceptive scheme that unjustly enriched

8 │ themselves because they received monetary payments from her even though they did not fund

9 │ her loan. (*Id.*). She asserted that she would not have continued to make payments on her

10 │ loan had the defendants properly disclosed the discharge of her note to investors. (*Id.* at 24-

11 │ 25). She claimed that the defendants should return all of her funds to her, including her down

12 │ payment. (*Id.* at 25-26).

13 │ In the fifth cause of action, Plaintiff alleged that Flagstar breached the covenant of good

14 │ faith and fair dealing in contracts. (*Id.* at 26). Plaintiff asserted that when she requested a

15 │ loan modification, Flagstar told her to stop making payments on the mortgage. (*Id.*). She

16 │ claimed that while she and Flagstar were communicating about a loan modification and

17 │ exchanging financial information, Flagstar recorded a notice of default and initiated the

18 │ foreclosure process on her property. (*Id.*). She asserted that after the trustee's sale was

19 │ completed, Flagstar told her that she would not qualify for the loan modification. (*Id.*). She

20 │ alleged that she submitted personal financial information in the belief she would qualify for a

21 │ loan modification but alleged that Flagstar had no intention of ever modifying her loan. (*Id.*).

22 │ In the sixth cause of action, Plaintiff alleged slander of title against Trustee Corps and

23 │ Freddie Mac. (*Id.* at 27). She asserted that defendants knew that they did not have any

24 │ grounds to believe that she owed them any money on the note, that they did not know who the

25 │ actual investors on the note were, and that they did not know whether the note had been paid

26 │ in part or discharged. (*Id.*). She contended that Trustee Corps was not the trustee of the deed

27 │ of trust and was not authorized to foreclose. (*Id.*).

28 │ Plaintiff sought relief in the form of declaratory relief, reformation, and quiet title. (*Id.*

4

1  at 28-29).

2       Defendants now file motions to dismiss.

3                          **LEGAL STANDARD**

4       When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the

5  court must accept as true all factual allegations in the complaint as well as all reasonable

6  inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150

7  n.2 (9th Cir. 2000).  Such allegations must be construed in the light most favorable to the

8  nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  In general, the

9  court should only look to the contents of the complaint during its review of a Rule 12(b)(6)

10 motion to dismiss.  However, the court may consider documents attached to the complaint or

11 referred to in the complaint whose authenticity no party questions. *Id.; see Durning v. First*

12 *Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

13      The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a

14 claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th

15 Cir. 2001).  The issue is not whether a plaintiff will ultimately prevail but whether the claimant

16 is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246,

17 249 (9th Cir. 1997) (quotations omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint does

18 not need detailed factual allegations;  rather, it must plead "enough facts to state a claim to

19 relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022

20 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955,

21 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173

22 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual

23 content that allows the court to draw the reasonable inference that the defendant is liable for

24 the misconduct alleged").   Even though a complaint does not need "detailed factual

25 allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be

26 enough to raise a right to relief above the speculative level . . . on the assumption that all the

27 allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127

28 S.Ct. at 1965.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

1   elements of a cause of action will not do." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949. "Nor

2   does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

3   enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

4         If the court grants a motion to dismiss a complaint, it must then decide whether to grant

5   leave to amend.  The court should "freely give" leave to amend when there is no "undue delay,

6   bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party

7   by virtue of allowance of the amendment, [or] futility of amendment."  Fed. R. Civ. P. 15(a);

8   *Foman v. Davis*,  371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  Generally,

9   leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be

10   cured by amendment.  *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.

11   1992).

12   **DISCUSSION**

13   I.  **Violation of Nevada Foreclosure Law (Claim One) & Conspiracy to Violate Nevada Foreclosure Law (Claim Two)**

14         Nevada law provides that a deed of trust is an instrument that may be used to "secure

15   the performance of an obligation or the payment of any debt."  NRS § 107.020.  Upon default,

16   the beneficiary, the successor in interest of the beneficiary, or the trustee may foreclose on

17   the property through a trustee's sale to satisfy the obligation.  NRS § 107.080(2)(c).

18         The procedures for conducting a trustee's foreclosure sale are set forth in NRS

19   § 107.080.  To commence a foreclosure, the beneficiary, the successor in interest of the

20   beneficiary, or the trustee must execute and record a notice of the breach and election to sell.

21   NRS § 107.080(2)(c). The notice of default and election to sell must "[d]escribe the deficiency

22   in performance or payment and may contain a notice of intent to declare the entire unpaid

23   balance due if acceleration is permitted by the obligation secured by the deed of trust."  *Id.*

24   § 107.080(3)(a).  If the property is a residential foreclosure, the notice of default and election

25   to sell must comply with NRS § 107.087.  *Id.* § 107.080(3)(b).  Nevada Revised Statute

26   § 107.087 provides that the notice of default and election to sell must include the physical

27   address of the property and the contact information of the trustee or the person conducting

28

the foreclosure who is authorized to provide information relating to the foreclosure status of the property.  NRS § 107.087(1)(b)(1)-(2).

The trustee or other person authorized to make the sale must wait three months after recording the notice of default and election to sell.  NRS § 107.080(2)(d).  After the three month period, the trustee must give notice of the time and place of the sale.  *Id.* § 107.080(4).  Under NRS § 107.080(5), a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place if . . . [t]he trustee or other person authorized to make the sale does not substantially comply with the provisions of this section."  *Id.* § 107.080(5)(a).

A nominee on a deed of trust has the authority, as an agent, to act on behalf of the holder of the promissory note and execute a substitution of trustees.  *Gomez v. Countrywide Bank, FSB*, 2009 WL 3617650, * 1 (D. Nev. 2009).  As long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is no defect in the Nevada foreclosure.  *Id.* at *2.

In this case, Trustee Corps had the authority to initiate the foreclosure process against Plaintiff because Trustee Corps had been properly substituted as the trustee.  Specifically, on June 3, 2009, MERS, as a nominee of the holder of the note, executed a substitution of trustee and replaced Trustee Corps as the substituted trustee for Anderson.  (*See* Substitution of Trustee (#7-3) at 2).  The next day, Trustee Corps, as the substituted trustee, filed and recorded a notice of default.  (*See* Notice of Default (#7-2) at 2, 4).  Trustee Corps's notice of default and election to sell complied with NRS § 107.080(3)(a) because it described the deficiency in performance, "the installment of principal and interest which became due on 02/01/2009 and all subsequent installments of principal and interest."  (*See id.* at 3).  Nevada Revised Statute § 107.080(3)(a) requires the notice of default to identify either the deficiency in performance *or* the deficiency in payment.  *See* NRS § 107.080(3)(a).  Therefore, Trustee Corps was not required to identify the arrearage and the amount to bring the loan current.  Thus, Plaintiff has failed to state a claim upon which relief can be granted because Trustee Corps properly listed the deficient performance in the notice of default.  The Court grants

1   Trustee Corps and Flagstar's motions to dismiss claim one.  Furthermore, because there was

2   no violation of NRS § 107.080, the Court finds that there was no conspiracy to violate Nevada

3   foreclosure law and grants all parties' motions to dismiss claim two.

4   II.      **Fraud in the Inducement (Claim Three)**

5           In Nevada, the elements of common law fraud are: (1) a false representation by the

6   defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient

7   basis for making the representation); (3) defendant's intention to induce the plaintiff to act or

8   to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance

9   upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance.

10  *Bulbman, Inv. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

11          "In alleging fraud or mistake, a party must state with particularity the circumstances

12  constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's

13  mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires "an account of the

14  time, place, and specific content of the false representations as well as the identities of the

15  parties to the misrepresentations."  *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007)

16  (quotation omitted).  To comply with the rule, the allegations "must be specific enough to give

17  defendants notice of the particular misconduct which is alleged to constitute the fraud charged

18  so that they can defend against the charge and not just deny that they have done anything

19  wrong."  *Id.*  Rule 9(b) requires plaintiffs to inform each defendant separately of the allegations

20  surrounding the alleged fraud participation.  *Id.* at 764-65.  The plaintiff must also set forth an

21  explanation as to why the statement or omission complained of was false or misleading.  *In*

22  *re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).

23          In this case, Plaintiff does not plead with the particularity required by Rule 9(b).  Plaintiff

24  makes generalized allegations of fraud against Flagstar and Anderson, but never identifies the

25  specific content of their false representations.  (*See* Complaint (#1-2) at 21-22).  Instead,

26  Plaintiff alleges that they failed to inform her what would happen to her note and deed of trust

27  after she executed the loan documents and that they should have informed her that she was

28  making a risky transaction.  (*See id.*).  However, the deed of trust specifically stated that the

8

"Note or a partial interest in the Note (together with the Security Instrument) [could] be sold one or more times without prior notice to Borrower." (*See* Deed of Trust (#7-1) at 14, ¶ 20). Thus, she fails to allege how the omission was misleading. Additionally, a cause of action for fraud does not lie for bad financial advice.

Plaintiff does allege that Flagstar induced her to make payments when her property had already been foreclosed on. (*See* Complaint (#1-2) at 22, ¶ 77). However, she fails to allege anything more and, thus, fails to state with particularity a cause of action for fraud in the inducement. Accordingly, the Court grants Flagstar and Anderson's motion to dismiss claim three.

**III.    Unjust Enrichment (Claim Four)**

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff;  (2) appreciation of the benefit by the defendant; and   (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997).   Unjust enrichment is an equitable substitute for a contract. *DaSilva v. Wells Fargo Bank, N.A.*, 2010 WL 3910139 at *8 (D. Nev. 2010). Therefore, an action for unjust enrichment cannot lie where there is an express written agreement. *Id.*

Here, Plaintiff's loan documents created an express, written agreement upon which Plaintiff bases a majority of her claims.  There can be no agreement implied when there is an express agreement.  Accordingly, the Court grants Trustee Corps, Flagstar, and Anderson's motions to dismiss Plaintiff's fourth claim.  The Court also grants Freddie Mac's motion to dismiss claim four because Plaintiff fails to allege how Freddie Mac is unjustly retaining property it purchased for $170,160 during the valid foreclosure process. Therefore, Plaintiff fails to plead sufficient facts to state a claim for unjust enrichment against Freddie Mac.

**IV.    Breach of the Covenant of Good Faith and Fair Dealing (Claim Five)**

Under Nevada law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and execution. *A.C. Shaw Constr., Inc. v. Washoe County*, 784

P.2d 9, 9 (Nev. 1989).  To state a claim for breach of the covenant of good faith and fair dealing against Flagstar, plaintiff must allege: (1) plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied.  *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

Here, Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing because no loan modification contract existed between Plaintiff and Flagstar. Plaintiff's claim is based on Flagstar's failure to grant a loan modification based on oral negotiations. (*See* Complaint (#1-2) at 26).  Accordingly, the Court grants Flagstar's motion to dismiss claim five.

## V.    Slander of Title (Claim Six)

In Nevada, a cause of action for slander of title requires that "words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of their having been spoken." *Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983). "In order to prove malice it must be shown that the defendant knew that the statement was false or acted in reckless disregard of its truth or falsity." *Id*. The first element is satisfied if the defendant records a false document. *Kim v. Kearney*, 2010 WL 3603651 at *5 (D. Nev. 2010). A deed of trust that should have been cancelled is a false document. *Id*.

As discussed above, Trustee Corps had the authority to initiate the foreclosure process against Plaintiff because Trustee Corps had been properly substituted as the trustee. Additionally, Plaintiff never alleges that she was not in default and, thus, the contents of the notice of default were not false. (*See generally* Complaint (#1-2)). Therefore, Plaintiff fails to plead enough facts to state a claim for slander of title. Accordingly, the Court grants Trustee Corps and Freddie Mac's motions to dismiss Plaintiff's sixth claim.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that MTC Financial Inc. dba Trustee Corps' Motion to Dismiss (#6) is GRANTED without leave to amend.

1    IT IS FURTHER ORDERED that Federal Home Loan Mortgage Corporation's Motion

2  to Dismiss (#12) is GRANTED without leave to amend.

3    IT IS FURTHER ORDERED that Flagstar, FSB and Joan H. Anderson's Motion to

4  Dismiss (#23) is GRANTED without leave to amend.

5

6    Dated this 4th day of February, 2011.

7

8                                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28